UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY LEE-VICTOR WILLIAMS,
 #260576,

                    Petitioner,              Case No. 2:18-CV-12916

v.                                           Stephanie Dawkins Davis
                                             United States District Judge
PATRICK WARREN,

                    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR
A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE
OF APPEALABILITY, AND DENYING LEAVE TO
PROCEED *IN FORMA PAUPERIS* ON APPEAL**

**I.  Introduction**

    This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan

prisoner Anthony Lee-Victor Williams ("Petitioner") was convicted of first-degree

criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(c), and kidnapping,

MICH. COMP. LAWS § 750.349, following a jury trial in the Wayne County Circuit

Court.  He was sentenced to concurrent terms of 30 to 50 years imprisonment and

15 to 30 years imprisonment on those convictions in 2015.  In his pleadings,

Petitioner raises claims concerning the sufficiency of the evidence and the validity

of his sentence.  For the reasons stated herein, the Court denies the habeas petition,

denies a certificate of appealability, and denies Petitioner leave to proceed in forma

pauperis on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from his restraint and sexual assault of a

woman in Detroit, Michigan on December 22, 2013. The Court adopts

Respondent's summary of the trial facts and testimony to the extent it is consistent

with the record. Those facts are as follows:

> At 7:00 pm on December 22, 2013, Erica Jackson was
> attending a going-away party at her friend's house in
> Detroit. (7/23/15 Trial Tr., pp. 137-38.) At some point,
> Jackson ran out of cigarettes, and left the party to go to
> the store to purchase more. (*Id*. at p. 139.) Rather than
> go to the store that was across the street from her friend's
> house, Jackson decided to walk a few blocks to the
> Vinewood Express liquor store, because she knew the
> owners of that store and wanted to stop in to say hello.
> (7/23/15 Trial Tr., p. 139; 7/27/15 Trial Tr., p. 9, 22.)
>
> While on the way to the store, a man approached Jackson
> from behind and asked her for directions to Clark Park.
> (7/23/15 Trial Tr., p. 139.) To describe where the man
> needed to go, Jackson took a few steps forward and
> pointed. (*Id*. at pp. 140-41.) The man followed Jackson
> as she walked, and when the two approached an alley, the
> man grabbed Jackson's arm and dragged her into the
> alley. (*Id*. at p. 141.) Jackson attempted to get away, but
> the man put a knife to her neck and warned her that, if
> she screamed, he would kill her. (*Id*. at p. 142.)
>
> Once they got into the alley, the man told Jackson to turn
> around and face the brick wall. (7/23/15 Trial Tr., p.
> 144.) The man also told Jackson that he wanted to "cut
> [her] face." (Id. at pp. 144-45.) Jackson attempted to
> humanize herself by telling the man that she was a mother

to five children and that her father was dying. (*Id*. at p. 145.) In response, the man told Jackson to pull her pants down. (*Id*.) Jackson complied. (*Id*.)

The man then put his arm around the front of Jackson, put his penis in Jackson's vagina, and raped her from behind. (7/23/15 Trial Tr., pp. 145-46.) After ejaculating, the man threw Jackson to the ground, told her to count to 50, kicked her in the back of the head, told her not to tell anyone, and ran away. (*Id*. at pp. 146-47.) Jackson waited until she no longer heard his footsteps, got up, pulled her pants back on, and ran in the opposite direction. (*Id*. at p. 147.)

After running a short distance, Jackson saw a police squad car, so she ran up to the car and, while hysterically crying, reported to the officer that she had been raped. (7/23/15 Trial Tr., p. 147; 7/27/15 Trial Tr., pp. 39-40.) The officer called Jackson an ambulance,[1] and while they waited, Jackson described what happened. (7/23/15 Trial Tr., p. 148.) The ambulance arrived and took Jackson to the hospital, where a sexual assault nurse examiner performed a rape kit on Jackson. (*Id*. at pp. 148-49; 7/27/15 Trial Tr., pp. 50, 61.) The nurse and a police officer also took photos of Jackson's injuries, which included scraped knees and elbows, a bruised chin, a busted lip, and a knot on her head. (7/23/15 Trial Tr., p. 150; 7/27/15 Trial Tr., pp. 50-60, 80.)

The police eventually picked up the rape kit from the hospital and tested the samples to determine whether any male DNA was present. (7/27/15 Trial Tr., pp. 62, 86-87.) All of the samples tested positive for male DNA. (*Id*. at p. 88.) The police then chose the sample with the most male DNA present—the vaginal swab—for further

---

[1] Because the area was known for prostitution, the officer also ran Jackson's name through a book of known prostitutes in the area. (7/27/15 Trial Tr., pp. 41-42, 46.) The search revealed that the police had no previous contact with Jackson. (*Id*. at p. 42.)

testing.  (*Id*. at pp. 88-89, 91.)  Further testing on the swab revealed an "unidentified male [DNA] profile."  (*Id*. at p. 95.)  The police entered the unidentified male profile into the Combined DNA Index System ("CODIS") database, and there was a match:  Anthony Lee-Victor Williams.  (*Id*. at pp. 96–97.)

The police then obtained a DNA sample from Williams, and performed testing on that sample.  (7/27/15 Trial Tr., pp. 97-99.)  The police compared the resulting DNA profile from Williams' sample to that of the unidentified male, and determined "that in the absence of identical twins or close relatives, it c[ould] be concluded to a reasonable degree of scientific certainty that the DNA from the sperm fraction of the vaginal swab sample and from Anthony Williams are from the same individual."  (*Id*. at pp. 99-100.)

Jackson learned from the police in October or November of 2014 that there was a DNA match for the samples taken from her for the rape kit.  (7/23/15 Trial Tr., pp. 153-54.)  The police met with Jackson for a photo line-up, but, from the photos, Jackson was unable to identify the man who kidnapped and raped her because the photos were black and white and were not clear, and because Jackson did not want to point someone out unless she was 100% sure it was the perpetrator.  (*Id*. at pp. 154-55; 7/27/15 Trial Tr., pp. 127-28.)  However, Jackson was subsequently able to identify Williams during his preliminary examination and at trial.  (7/23/15 Trial Tr., pp. 157-58.)

Williams testified at trial that, on the night of December 22, 2013, he approached Jackson on the street and asked her what she was doing outside, and Jackson replied that she was trying to make some money.  (7/27/15 Trial Tr., pp. 141–42.)  Williams stated that he and Jackson then went into the alley and had sex, and Williams gave her $20.  (*Id*. at p. 142.)  According to Williams, Jackson

stated that she wanted $40, and began to argue with him about payment. (*Id*. at pp. 142, 144.) However, during jail calls played at trial, Williams stated a "Mexican chick" that he "beat up" was "accusing [him] of all these things" because he "wouldn't f*** with her." (*Id*. at pp. 148-50.)

Resp. Answer, pp. 4-8, ECF No. 7, PageID.77-81.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims contained in his current petition, as well as an ineffective assistance of counsel claim. The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's convictions and sentences. *People v. Williams*, No. 329447, 2017 WL 652163 (Mich. Ct. App. Feb. 16, 2017) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Williams*, 501 Mich. 975, 906 N.W.2d 775 (2018).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I.      His convictions should be reversed because there was insufficient and incompetent evidence that he committed the offenses.

II.     He is entitled to re-sentencing because the scoring of the offense variables occurred through improper judicial fact-finding and his sentences are unreasonable.

Respondent filed an answer to the habeas petition contending that it should be

denied for lack of merit. Petitioner filed a reply to that answer.


### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal

courts must use when considering habeas petitions brought by prisoners challenging

their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--
>
> (1)      resulted in a decision that was contrary to, or involved an
>          unreasonable application of, clearly established Federal law,
>          as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence presented in
>          the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*).

A state court's ruling that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Pursuant

to § 2254(d), "a habeas court must determine what arguments or theories supported

or ... could have supported, the state court's decision; and then it must ask whether

it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  Thus,

in order to obtain habeas relief in federal court, a state prisoner must show that the

state court's rejection of his claim "was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20

(2014).  Federal judges "are required to afford state courts due respect by

overturning their decisions only when there could be no reasonable dispute that they

were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).  A habeas petitioner

cannot prevail as long as it is within the "realm of possibility" that fairminded

jurists could find the state court decision to be reasonable.  *Woods v. Etherton*, __

U.S. __, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination

of whether the state court's decision comports with clearly established federal law

as determined by the Supreme Court at the time the state court renders its decision.

*Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122

(2009) (noting that the Supreme Court "has held on numerous occasions that it is

not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (*per curiam*)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (*per curiam*); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (*per curiam*). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas

review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.  Discussion

### A.  Sufficiency of the Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient, competent evidence to support his convictions.  Respondent contends that this claim lacks merit.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28

U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "mere existence of sufficient evidence to convict ... defeats a petitioner's claim." *Id.* at 788-89.

Under Michigan law, the elements of first-degree criminal sexual conduct as relevant to this case are: (1) sexual penetration with another person, (2) under circumstances involving the commission of another felony. *See* Mich. Comp. Laws § 750.520b(1)(c); *People v. Waltonen*, 272 Mich. App. 678, 686, 728 N.W.2d 881, 886 (2006). The elements of kidnapping as relevant to this case are: (1) the defendant knowingly restrains another person, (2) with the intent to engage in criminal sexual penetration or criminal sexual conduct with that person. *See*

11

MICH. COMP. LAWS § 750.349(1)(c); *People v. Willis*, No. 344561, 2019 WL 7206064, *7 (Mich. Ct. App. Dec. 26, 2019).  "Restrain" means "to restrict a person's movements or to confine the person so as to interfere with the person's liberty without the person's consent or without legal authority."  MICH. COMP. LAWS § 750.349(2).

The prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense.  *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind.  *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

Applying the *Jackson* standard, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence to support Petitioner's convictions and denied relief on this claim.  The court explained in relevant part:

> Defendant does not challenge the sufficiency of the
> evidence in support of the specific elements of
> kidnapping and first-degree CSC.  Instead, he asserts that

the victim's testimony was incompetent or incredible, and he also suggests that there was insufficient evidence that he was the perpetrator of the offenses. "[I]dentity is an element of every offense." *People v. Yost*, 278 Mich. App. 341, 356; 749 N.W.2d 753 (2008).

Defendant argues that the victim's testimony was not "competent" because she changed her story, she could not initially identify him, she could only identify him in court, and only one of eight samples from the victim was DNA-tested. The alleged deficiencies in the victim's testimony relate to her credibility, and the fact that only one of the samples from the victim was DNA-tested goes to the weight of the evidence. "This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *People v. Stevens*, 306 Mich. App. 620, 628; 858 N.W.2d 98 (2014).

Further, defendant admitted to having sex with the victim, but claimed that he paid her for sex; thus, defendant's challenge regarding the DNA evidence linking him to the victim is not persuasive. Moreover, the victim testified that she was unable to identify defendant from the pre-trial photographic lineup because of the poor quality of the black and white photographs. However, she saw and spoke to defendant before he attacked her and she testified that she was 100 percent certain that defendant was her attacker. Viewing the evidence in the light most favorable to the prosecution, *Bailey*, 310 Mich. App. at 713, the jury could have reasonably found beyond a reasonable doubt that defendant committed the charged crimes of kidnapping and first-degree CSC based on the victim's identification of defendant, police testimony, and the DNA evidence indicating that defendant's DNA matched the DNA from the victim's vaginal swab.

*Williams*, 2017 WL 652163 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The evidence presented at trial, viewed in a light favorable to the prosecution, established that Petitioner committed the offenses of which he was convicted. The victim testified that Petitioner grabbed her, forced her into an alley, and vaginally raped her against her will. Such testimony, if believed, was sufficient to support Petitioner's convictions for first-degree criminal sexual conduct and kidnapping. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658-59 (6th Cir. 2008) (citing cases). Moreover, the DNA evidence taken from the victim's rape kit, the victim's documented injuries, and the police testimony describing her condition after the incident provided further evidence of Petitioner's guilt.

Petitioner argues his consent/prostitution defense and challenges the credibility of the victim, the quality of the DNA evidence, and the jury's evaluation of the testimony and evidence presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record -

that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

## B. Sentencing Claim

Petitioner also asserts that he is entitled to habeas relief because several offense variables of the state sentencing guidelines were scored through improper judicial fact-finding and his sentences are unreasonable. Respondent contends that this claim is not cognizable on habeas review and that it lacks merit.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums for his offenses. *See* MICH. COMP. LAWS §§ 750.520b, 750.349 (both authorizing a sentence of any term of years or life imprisonment). Consequently, his sentences are insulated from habeas review absent a federal constitutional violation.

The Michigan Court of Appeals ruled that Petitioner's sentences are

appropriate and denied relief on this claim. The court explained:

> Whether a defendant's sentence violates the Sixth
> Amendment is reviewed de novo. *People v. Lockridge*,
> 498 Mich. 358, 373; 870 N.W.2d 502 (2015). "[A]
> preserved, nonstructural error is subject to the harmless
> beyond a reasonable doubt test." *People v. Terrell*, 312
> Mich. App. 450, 464; 879 N.W.2d 294 (2015), lv held in
> abeyance _ Mich. _; 878 N.W.2d 480 (2016).
>
> In *Lockridge*, 498 Mich. at 389, our Supreme Court
> concluded that Michigan's sentencing guidelines violate
> the Sixth Amendment. To remedy the constitutional
> violation, the Court held that the sentencing guidelines
> are advisory only. *Id*. at 391. However, sentencing
> courts must "continue to consult the applicable
> guidelines range and take it into account when imposing
> a sentence." *Id*. at 392. Further, the sentencing court is
> permitted to score the OVs based on facts not admitted
> by defendant or found by the jury beyond a reasonable
> doubt. *Id*. at 392 n 28.
>
> When a defendant's sentence is calculated using a
> guidelines minimum sentence range in which OVs have
> been scored on the basis of facts not admitted by the
> defendant or found beyond a reasonable doubt by the
> jury, the sentencing court may exercise its discretion to
> depart from that guidelines range without articulating
> substantial and compelling reasons for doing so. A
> sentence that departs from the applicable guidelines
> range will be reviewed by an appellate court for
> reasonableness. [*Id*. at 391-392 (footnote omitted).]
>
> Contrary to defendant's assertion, then, the trial court
> was required to score the OVs on the basis of
> judicially-found facts under *Lockridge*, 498 Mich. at 392
> n 28 ("Our holding today does nothing to undercut the

requirement that the highest number of points possible must be assessed for all OVs, whether using judge-found facts or not."). As long as the trial court recognized and treated the guidelines as advisory, any judicial fact-finding did not violate the Sixth Amendment. And it is apparent from the parties' arguments and the court's remarks at sentencing that the trial court was aware that the guidelines range should be treated as merely advisory under *Lockridge*. Thus, the trial court did not err to the extent that it relied on judicial fact-finding to score the OVs, and it properly considered defendant's guidelines range based on those scores. Accordingly, there was no error.

We also reject defendant's claim that his sentence is unreasonable. The trial court sentenced defendant within the guidelines range. Because there was no departure, it is unnecessary to review defendant's sentence for reasonableness. *See Lockridge*, 498 Mich. at 392.

*Williams*, 2017 WL 652163 at *2 (footnotes omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As an initial matter, to the extent that Petitioner asserts that the state courts erred in interpreting Michigan law and denying him relief under *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015), or finding that his sentence was reasonable under Michigan law, he fails to state a claim upon which federal habeas relief may be granted. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Petitioner is thus not entitled to habeas relief on any such state law issues.

Petitioner, however, also seems to assert that the trial court relied upon judicially-found facts that were neither admitted by him nor proven to the jury beyond a reasonable doubt in scoring several offense variables of the Michigan sentencing guidelines in violation of his Sixth Amendment rights. This claim arises from the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. In

*Alleyne*, the Supreme Court extended *Apprendi* to mandatory minimum sentences, ruling that any fact that increases a mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and proven beyond a reasonable doubt. *Alleyne*, 570 U.S. at 111-12.

In *Lockridge*, the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines violate the Sixth Amendment because the guidelines "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506. The court's remedy was to make the guidelines advisory only. *Id*. at 520-21. The United States Court of Appeals for the Sixth Circuit has since issued a decision agreeing with *Lockridge* and ruling that *Alleyne* clearly established that Michigan's pre-*Lockridge* mandatory minimum sentencing guidelines scheme violated the Sixth Amendment. *See Robinson v. Woods*, 901 F.3d 710, 716-18 (6th Cir. 2018). The Sixth Circuit explained that "[a]t bottom, Michigan's sentencing regime violated *Alleyne'*s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id*. at 716. This Court is bound by the Sixth Circuit's decision.

*Alleyne* applies to Petitioner's case. *Alleyne* was decided on June 17, 2013 and Petitioner was sentenced on August 11, 2015. *See* 8/11/15 Sent. Tr., ECF No.

8-8. *Alleyne* was thus clearly established law before Petitioner's convictions and sentences became final and it governs his sentencing. Petitioner, however, was also sentenced after *Lockridge* was decided on July 29, 2015. *Lockridge* made the Michigan sentencing guidelines advisory, rather than mandatory. The application of advisory sentencing guidelines does not violate the Sixth Amendment. *Alleyne*, 570 U.S. 116; *Booker*, 543 U.S. at 233; *see also Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, *2 (6th Cir. July 13, 2020) (citing *Alleyne* and denying a certificate of appealability on similar claim). Consequently, even if certain offense variables were determined by judicially-found facts, Petitioner's sentences do not run afoul of *Alleyne* or the Sixth Amendment. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner

demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal. This case is **CLOSED**.

**IT IS SO ORDERED**.

Dated: June 7, 2021        s/Stephanie Dawkins Davis
                                       Stephanie Dawkins Davis
                                       United States District Judge